



U.S. POSTAGE >> PITNEY BOWES

ZIP 45750 $ 008.27⁰
02 1W
0001373647 AUG. 28 2012.



CERTIFIED MAIL

7160 3901 9849 2427 3461

BRENDA L. WOLFE
WASHINGTON COUNTY CLERK OF COURTS
205 PUTNAM STREET
MARIETTA, OH 45750

THIS ENVELOPE CONTAINS A LEGAL NOTICE
FROM THE COMMON PLEAS COURT OF
WASHINGTON COUNTY, OHIO

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
SHOWING ADDRESS WHERE DELIVERED

PLEASE FORWARD

12OT000296
WA71 6039 0198 4924 273
E I DUPONT DE NEMOURS AND CO
8480 DUPONT ROAD
WASHINGTON, WV 26181

IN THE COURT OF COMMON PLEAS
GENERAL DIVISION – WASHINGTON COUNTY
205 PUTNAM STREET
MARIETTA, OH 45750

THOMAS YAKUBIK vs. E I DUPONT DE NEMOURS AND COMPANY

To:     E I DUPONT DE NEMOURS AND COMPANY
        8480 DUPONT ROAD
        WASHINGTON WV 26181

CASE NO. 12OT000296

To the within named defendant:

You are hereby summoned that a complaint
(a copy of which is hereby attached and made
a part hereof) has been filed against you in
this court by the plaintiff named herein. You are
required to serve upon the Plaintiff's Attorney, a
copy of your answer to the complaint within 28
days after service of this summons upon you,
exclusive of the day of service on Plaintiff's Attorney.
Said answer must be filed with this court within three
days after service on Plaintiff's Attorney.

SUMMONS ON
COMPLAINT

ED LANE
Judge, Common
Pleas Court

Papers Attached:
COMPLAINT STAMPED 8/28/12

The name and address of the Plaintiff's
Attorney is as follows:

ATTY GREGORY H COLLINS
ONE CASCADE PLAZA  STE 800
AKRON OH 44308

ATTY DAVID G UTLEY
ONE CASCADE PLAZA  STE 800
AKRON OH 44308

If you fail to appear and defend, judgment
by default will be taken against you for
the relief demanded in the complaint.

BRENDA L WOLFE
Clerk of Courts, By

Kim Goddard

Deputy
Dated: 8/28/12

Original Summons to:

IN THE COURT OF COMMON PLEAS
WASHINGTON COUNTY, OHIO

| | |
|---|---|
| **THOMAS YAKUBIK**<br>P.O. Box 41<br>Barlow, OH 45712<br><br>       Plaintiff,<br><br>v.<br><br>**E.I. DUPONT DE NEMOURS &**<br>**COMPANY,**<br>1007 North Market Street<br>Wilmington, DE 19898<br><br>       Defendant. | CASE NO.: 12OT296<br><br>JUDGE: _____ LANE<br><br>**COMPLAINT FOR MONEY**<br>**DAMAGES WITH**<br>**INTERROGATORIES, REQUESTS**<br>**FOR PRODUCTION OF**<br>**DOCUMENTS AND REQUESTS**<br>**FOR ADMISSION ATTACHED**<br><br>**(JURY DEMAND ENDORSED**<br>**HEREON)** |

## COMPLAINT

Now comes the Plaintiff, Thomas Yakubik, by and through counsel, and for his Complaint against the Defendant, states as follows:

### NATURE OF ACTION

1. This is a civil action for compensatory and punitive damages and costs incurred and to be incurred by the Plaintiff for bodily injury arising from the intentional, knowing, reckless, and negligent acts and omissions of the Defendant in connection with the contamination of human drinking water supplies used by the Plaintiff.

### JURISIDICTION AND VENUE

2. At all times material, Plaintiff resided in Washington County, Ohio.

3. DuPont is a Delaware Corporation authorized to conduct business in the State of Ohio

and has a principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

4. This Court has jurisdiction over DuPont by virtue of R.C. 2307.382 because DuPont owns and operates facilities in Ohio, transacts business in Ohio, and contracts to sell its goods in Ohio. Additionally, DuPont's acts and/or omissions, as described herein, have caused tortious injury to Plaintiff in Ohio. Further, DuPont regularly does or solicits business in Ohio, has persistently through its acts and/or omissions caused contamination of human water supply in Ohio, derives substantial revenue from goods used or consumed in Ohio, and has continuous and systematic contacts with Ohio.

5. Venue is proper because DuPont has conducted activity in Washington County that gives rise to this claim for relief.

<u>GENERAL ALLEGATIONS</u>

6. The Plaintiff realleges and reavers the allegations set forth in paragraph 1 through 5 of his Complaint, as if fully rewritten herein.

7. DuPont owns and operates a manufacturing facility in Wood County, West Virginia known as the "Washington Works Plant", and has been the owner and operator at all times relevant to this Complaint.

8. In connection with its manufacturing operations at its Washington Works Plant, DuPont has used hazardous, toxic and/or carcinogenic wastes, substances, pollutants and/or contaminants, including ammonium perfluorooctanoate (a/k/a C-8/FC-143/APFO/DFS-2/PFOA) (hereinafter "C-8"), (collectively the "Materials") since the early 1950s.

9. During the course of its operations at its Washington Works Plant, DuPont has negligently, recklessly, knowingly, carelessly, wrongfully and/or intentionally allowed, caused, and/or otherwise permitted and is continuing to so allow, cause and otherwise permit releases of

2

Materials from the Washington Works Plant into those waters that are and have been used for human drinking water purposes (the "Releases).

10. C-8 is a bioretentive substance.

11. C-8 is a bioaccumulative substance.

12. C-8 is a biopersistent substance.

13. C-8 is an animal carcinogen.

14. C-8 is a proven hazardous substance.

15. DuPont negligently, recklessly, carelessly, wrongfully, and/or intentionally failed to disclose to those individuals who used water impacted by the Releases that the levels of C-8 detected in the water exceeded DuPont's own internal "community exposure guideline" (CEG) of 1 part per billion (1 ppb) for C-8 in drinking water.

16. By at least May of 2000, DuPont had learned that the manufacturer of the C-8 used by DuPont at its Washington Works Plant, the Minnesota Mining and Manufacturing Company ("3M"), had decided to stop manufacturing and selling C-8, based upon concerns associated with the bio-persistence and relative toxicity of C-8 and threat that the US EPA would ban the material.

17. By at least 2001, DuPont had learned that C-8 had been detected in private water wells hydraulically down-gradient from one or more of the locations where DuPont had dumped C-8 into the ground.

18. Despite knowledge of the same bio-persistence and toxicity concerns known to 3M relating to the use of C-8 and its release into the environment and the fact that C-8 was getting into public and private drinking water supplies, DuPont began direct manufacture of its own C-8 at the Washington Works plant.

3

19. DuPont knew for several years that the level of C-8 discharged from its Washington Works Plant was contributing to the levels of C-8 present in human water supplies.

20. It was not until the Spring of 2001, after the West Virginia Division for Environmental Protection ("WVDEP") first asked DuPont to begin monitoring and reporting to WVDEP the levels of C-8 discharged from DuPont's Washington Works plant into the Ohio River, that DuPont installed a carbon absorption treatment system at its Washington Works plant to attempt to begin reducing the levels of C-8 discharged directly from the Washington Works Plant into the Ohio River.

21. At all times relevant hereto, the Little Hocking Water Association, Inc. ("Little Hocking") has operated a public water supply system that supplies potable water to residences, including the Plaintiff's, in at least eight townships in Washington County, Ohio and two townships in Athens County, Ohio, including approximately 12,000 people.

22. In a March 2009 U.S. EPA safe drinking Safe Drinking Water Act Consent Order with DuPont, the U.S. EPA determined that C-8 and its salts may present an "imminent and substantial endangerment to human health at concentrations at or above 0.40 ppb in drinking water." The levels of C-8 in Little Hocking's aquifer were above 0.40 ppb.

23. The 0.40 ppb level does not account for chronic exposure to C-8. In an effort to account for chronic lifetime exposure, independent scientists at the New Jersey Department of Environmental Protection identified a C-8 drinking water guidance value of 0.04 ppb, an order of magnitude ten times lower than the level set forth in the March 2009 Safe Drinking Water Act consent order.

24. Effective December 1, 2006, the Ohio EPA listed C-8 as a toxic air contaminant.

25. The U.S. EPA has found that C-8 can remain in the human body for years and that

4

drinking water contaminated with C-8 can produce concentrations of C-8 in the blood serum that are higher than the concentrations present in the water itself.

26. Individuals whose residential water is supplied by Little Hocking have some of the highest non-worker C-8 blood levels of any reported in the United States and Canada- ranging from approximately 112 ppb to, at least, 1950 ppb.

27. The average level of C-8 in the blood of people in the United States is 4-5 ppb.

28. Given the high level of C-8 in the blood of Little Hocking's water users along with the bio-persistent nature of C-8 in environmental media and humans, continued C-8 exposure presented a great threat to Little Hocking's water users.

29. Sampling results for Little Hocking's individual production wells have shown levels of C-8 as high as 18.6 ppb. Samples from test wells have shown levels of C-8 as high as 29.1 ppb, samples from test borings have shown levels of C-8 as high as 78 ppb, and soil samples from the wellfields have shown levels of C-8 over 100 ppb.

30. In a 2003 C-8-related West Virginia class action lawsuit ("class action") against DuPont:

    a)      DuPont represented to the court that there is no way for DuPont to prevent its C-8 emissions from getting into the class members' drinking water;

    b)      DuPont represented to the court that there are no alternatives to using C-8 in any of the Washington Works Plant's manufacturing operations; and

    c)      the court found that DuPont continues to actively and intentionally release C-8 from the Washington Works Plant into the air and water.

31. Part of the class action settlement created a Science Panel to conduct research into whether there is a probable link that exists between C-8 and human disease.

32. On April 15, 2012 the Science Panel concluded that there is a probable link between exposure to C-8 and kidney cancer.

5

33. The Science Panel has also found a probable link between exposure to C-8 and testicular cancer, ulcerative colitis, thyroid disease, and pregnancy-induced hypertension to date.

34. Plaintiff received a blood test for C-8 and C-8 was found in his blood.

35. As a result of the C-8 in his blood, Plaintiff had his left kidney removed and Plaintiff was diagnosed with chromophobe renal cell carcinoma ("CRCC").

36. The Releases have made and/or continue to make Plaintiff physically ill and otherwise physically harmed, and/or have caused and continue to cause associated emotional and mental stress, anxiety, and fear of current and future illnesses, including but not limited to, fear of significant risk of cancer and other diseases and illnesses.

## COUNT ONE
## NEGLIGENCE, CONCEALMENT AND FRAUD

37. The Plaintiff realleges and reavers the allegations set forth in paragraph 1 through 36 of his Complaint, as if fully rewritten herein.

38. In connection with its operation of the Washington Works Plant, DuPont has had and continues to have a duty to operate and manage the Washington Works Plant in such a way as to not create a nuisance or condition causing any injury or damage to human health or the environment.

39. DuPont breached its duty of care by negligently operating and managing the Washington Works Plant and conducting other operations and activities at the Washington Works Plant in such a manner as to negligently cause, permit, and allow the Releases.

40. The Defendant's negligent acts and omissions proximately caused and continue to cause damages to Plaintiff in the form of cancer and bodily injury.

41. The Defendant knowingly, intentionally, recklessly and/or negligently failed and/or refused to advise the Plaintiff of the danger to his health and property posed by the Releases.

6

42. At all times relevant herein, DuPont had and continues to have a duty to, *inter alia*:

a) Take adequate and timely precautions to prevent the Materials from being released and contaminating the environment, including the soil, surface water, sediments, biota, groundwater, and human drinking water;

b) To remove the Materials from the soil, surface water, sediments, biota, groundwater, and human drinking water;

c) To adequately warn federal, state, and local authorities, potentially affected members of the public, and purveyors of public water; and

d) To handle, treat, store and/or dispose of the Materials in such a manner so as to not create a nuisance or a condition causing imminent and substantial danger to human health and/or the environment.

43. Defendant knowingly, intentionally, recklessly and/or negligently withheld information from the Plaintiff, who had a right to know of information which would have prevented Plaintiff from being exposed to the Materials.

44. Plaintiff did not have sufficient information to determine the safety of the drinking water impacted by the Releases and, therefore, relied upon the superior knowledge of the Defendant in deciding to ingest the drinking water, and as result of his reliance on the Defendant's false and misleading affirmative misrepresentations and intentional omissions and hiding of relevant, significant and material facts and information, Plaintiff was misled into believing that the drinking water was safe and effective for human consumption.

45. Defendants withheld information which they had in their possession concerning research, testing, lack of research and testing, studies of humans and animals who had been exposed to the Materials that demonstrated that the Materials cause damage to humans and animals, as well as information that medically, legally, scientifically and ethically the Plaintiff had a right to know before ingesting the drinking water and which Defendants had a duty under Ohio law to disclose.

7

46. As a proximate result of the aforesaid acts and omissions by the Defendant and acting for and on their own behalf and as agents, ostensible agents, employees, conspirators and joint venturers of others, contaminated drinking water was placed in the stream of commerce, distributed and sold to customers in Ohio and ingested by the Plaintiff, and the Plaintiff was injured as herein alleged.

47. The aforesaid acts and omissions of Defendant, acting in the manner as alleged herein, were negligent and as a proximate result the Plaintiff has suffered and will suffer the following damages:

a) Expenses reasonably necessary for the monitoring of cancer and other illnesses or diseases associated with the ingestion of the Materials;

b) Medical and hospital bills for the removal of the Plaintiff's left kidney;

c) Medical and hospital bills for future treatment, diagnostic and preventative treatment, and treatment of injuries;

d) Physical injury, both temporary and permanent;

e) Severe and significant emotional distress and mental pain and suffering;

f) Humiliation, embarrassment and fear;

g) Loss of enjoyment of life;

h) Annoyance and inconvenience; and

i) Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys fees and costs associated with the prosecution of this action.

## COUNT TWO
## NEGLIGENCE PER SE

48. The Plaintiff realleges and reavers the allegations set forth in paragraph 1 through 47 of his Complaint, as if fully rewritten herein.

8

49. By its acts and omissions resulting in the Releases, the Defendant violated and continues to violate one or more applicable Ohio statutes, including but not limited to R.C. 6111 *et seq.*, constituting negligence per se.

50. The Defendant's violation of law proximately caused and continues to proximately cause damage to Plaintiff in the form of bodily injury for which Defendant is liable.

## COUNT THREE
## ABNORMALLY DANGEROUS OR ULTRAHAZARDOUS ACTIVITY

51. The Plaintiff realleges and reavers the allegations set forth in paragraph 1 through 50 of his Complaint, as if fully rewritten herein.

52. Plaintiff has been exposed to the Releases from the Washington Works Plant as a proximate result of DuPont's acts and omissions.

53. The use, disposal, storage, generation and release of the Materials are abnormally dangerous or ultrahazardous activities in which DuPont is and has been engaged.

54. By reason of carrying on such activities which proximately and foreseeably caused the contamination of Plaintiff's water supply and the surrounding environment, DuPont is strictly liable to Plaintiff even if it exercised the utmost care to prevent harm, which DuPont nonetheless failed to do. This liability arises pursuant to applicable state common law.

55. DuPont directly and proximately caused injury and bodily harm to Plaintiff described herein.

## COUNT FOUR
## PAST AND CONTINUING TRESPASS AND BATTERY

56. The Plaintiff realleges and reavers the allegations set forth in paragraph 1 through 55 of his Complaint, as if fully rewritten herein.

57. The Defendant's acts and omissions resulting in the Releases have resulted and

9

continue to result in the release and threatened release of Materials at, under, onto, and into Plaintiff's body and property.

58. The Materials present in Plaintiff's body originating from the Washington Works Plant were at all relevant times hereto, and continue to be, the property of Defendant.

59. The invasion and presence of the Materials at, under, onto, and into Plaintiff's body and property was and continues to be without permission of authority from Plaintiff.

60. The presence and continuing presence of the Material at, under, onto, and into Plaintiff's body and property constitutes a continuing trespass and battery.

61. The Defendant's past and continuing trespass and battery upon Plaintiff's body and property proximately caused and will continue to proximately cause damage to Plaintiff in the form of bodily injury and property damage, for which the Defendant is liable.

## COUNT FIVE
## PUNITIVE DAMAGES

62. The Plaintiff realleges and reavers the allegations set forth in paragraph 1 through 61 of his Complaint, as if fully rewritten herein.

63. The Defendant's acts and omissions as described above were conducted with such intentional, malicious, wanton, willful, and reckless indifference to Plaintiff's rights and flagrant disregard for the safety and property of the Plaintiff that the Defendant is liable for punitive damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant as follows:

1. On Count One of the Plaintiff's Complaint, compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000.00);

2. On Count Two of the Plaintiff's Complaint, compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000.00);

10

3. On Count Three of the Plaintiff's Complaint, compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000.00);

4. On Count Four of the Plaintiff's Complaint, compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000.00);

5. On Count Five of the Plaintiff's Complaint, compensatory and punitive damages in an amount in excess of twenty-five thousand dollars ($25,000.00); and,

6. On all counts of the Complaint, interest, costs, attorneys fees and any further relief that this Court deems the Plaintiff entitled.

Respectfully submitted,

DAVIS & YOUNG

By: _____
GREGORY H. COLLINS (0040230)
DAVID G. UTLEY (#0038967)
One Cascade Plaza, Ste. 800
Akron, Ohio 44308
Phone:        (330) 376-1717
Facsimile:    (330) 376-1797
E-mail:       gcollins@davisyoung.com
              dutley@davisyoung.com

*Attorneys for Plaintiff, Thomas Yakubik*

11

## JURY DEMAND

Pursuant to Ohio Rule of Civil Procedure 38(B), Defendant hereby demands a trial by jury on all issues herein.

Respectfully submitted,

DAVIS & YOUNG

By: _____

GREGORY H. COLLINS (0040230)
DAVID G. UTLEY (#0038967)
One Cascade Plaza, Ste. 800
Akron, Ohio 44308
Phone:          (330) 376-1717
Facsimile:      (330) 376-1797
E-mail:         gcollins@davisyoung.com
                dutley@davisyoung.com

*Attorneys for Plaintiff, Thomas Yakubik*

12

## IN THE COURT OF COMMON PLEAS
## WASHINGTON COUNTY, OHIO

| | | |
|---|---|---|
| **THOMAS YAKUBIK** | ) | **CASE NO.** |
| **P.O. BOX 41** | ) | |
| **BARLOW, OHIO 45712** | ) | **JUDGE** |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S FIRST SET OF** |
| | ) | **INTERROGATORIES DIRECTED** |
| v. | ) | **TO THE DEFENDANT** |
| | ) | |
| **E.I. DUPONT DE NEMOURS &** | ) | |
| **COMPANY, a Delaware corporation,** | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Thomas Yakubik, pursuant to Ohio Rule of Civil Procedure 33, propounds the

following Interrogatories to be answered by the Defendant, E.I. DUPONT DE NEMOURS &

COMPANY, under oath, and in writing, within thirty (30) days of service.   Answers should be

served upon Counsel for the Plaintiff at his counsel's office, Davis & Young, L.P.A., One

Cascade Plaza, Suite 800, Akron, Ohio 44308.   Please note that these Interrogatories are to be

deemed continuing in nature and should Defendant learn of additional, supplemental or

corrective information following submission of its answers, such information shall be used to

supplement these answers not later than five (5) days prior to trial.

## DEFINITIONS

1.  "Identify" when used in reference to a person or custodian means:

    a.  Full name;
    b.  Present home address, or if unavailable, last known home address;
    c.  Present business address, or if unavailable, last known business address; and
    d.  Present job title, or if not presently employed, last job title.

2.  "Identity" when used with reference to a document means to provide:

    a.  The date the document bears and the date it was written if different;
    b.  The name and address of the author or each person who participated in its writing;
    c.  The name and address of each person to whom it was addressed or directed;
    d.  The name and address of each person who received a copy of the documents;
    e.  A description of the document, as, for instance, "letter", "memorandum", etc.;
    f.  The subject matter of the document;
    g.  Its present location and custodian, or if unknown its last known location and custodian; and
    h.  If any such document is no longer in your possession or subject to your control, state what disposition was made of the original, and all copies of it, the reasons for such disposition and the date stated thereof.

3.  "Document" means the original and any non-identical copy (whether different from the original because of notes made upon such copy or otherwise) of any written, typed, printed or recorded material prepared, received or produced by or for you, or in your possession, custody or control, and includes but is not limited to correspondence, memoranda, notes, agenda, minutes of meetings, summaries, outlines, records, studies, surveys, reports, tabulations, graphs, charts, maps, books, appointment books, calendars, desk books, log books, pamphlets, catalogs, bulletins, notices, announcements, brochures, schedules, lists, manuals, instructions, contracts, agreements, telegrams, teletypes, tape records, microfilm, computer input and printouts.

4.  "Washington Works Plant" means the manufacturing facility in Wood County, West Virginia known as the "Washington Works Plant", and has been the owner and operator at all times relevant to this Complaint.

2

5. "C-8" means ammonium perfluorooctanoate (a/k/a C-8/FC-143/APFO/DFS-2/PFOA).

6. "Materials" means hazardous, toxic and/or carcinogenic wastes, substances, pollutants and/or contaminants, including ammonium perfluorooctanoate (a/k/a C-8/FC-143/APFO/DFS-2/PFOA) utilized by the Defendant at the Washington Works Plant.

3

## INTERROGATORIES

1.   State the full name(s) and address(es) of the person(s) answering these interrogatories. If more than one person answers, each answer should be identified by name as to each question(s) he or she answer should specify what information each answerer contributed.

ANSWER:

2.   List each and every reason why the Defendant released, allowed, caused and/or otherwise permitted the Release of Materials from the Washington Works Plant into the human water supply of Ohio, including but not limited to, the Ohio River, for every year since 1950.

ANSWER:

3.   Identify all steps that the Defendant claims to have undertaken in protecting the human water supply of Ohio, including but not limited to, the Ohio River, from the Materials released by the Defendant's Washington Works Plant, on an annual basis since 1950.

ANSWER:

4

4. For each year since 1950, identify all individuals who were involved in the decision to release Materials from the Washington Works Plant, which Materials would be released by the Washington Works Plant, the method that said Materials were to be released, where said Materials were to be released and the volume of said Materials that were to be released.

ANSWER:

5. From 1950 to the present time, identify all steps that the Defendant undertook to determine the potential danger to the people of the State of Ohio from any Materials released by the Washington Works Plant.

ANSWER:

6. Identify all procedures that the Defendant has utilized at any time since 1950 to determine the safety to humans or animals of releasing Materials from one of its facilities such as the Washington Works Plant into the environment, including the Ohio River. This should include, but not be limited to, all such facilities that released C-8.

ANSWER:

5

7. Identify all individuals that have presented claims against the Defendant in connection with allegations that the C-8 released by the Defendant from Washington Works Plant has caused injury to said person from 1950 to the present time.

ANSWER:

8. Identify all individuals that have presented claims against the Defendant in connection with allegations that the C-8 released by the Defendant from any facility other than Washington Works Plant anywhere in the world has caused injury to said person from 1950 to the present time.

ANSWER:

9. How much did the Defendant earn from activities performed at the Washington Works Plant from 1950, annually to the present time?

ANSWER:

6

10. Identify all Materials released into the Ohio River from the Washington Works Plant, for every year since 1950, by date released, amount released, Materials Released, individual authorizing the release and the customer associated with the product that was manufactured that resulted in the residual released.

ANSWER:

11. State the names and addresses of the following persons:

A.   All relevant persons who have or may have knowledge of facts relevant to this matter.

B.   All persons, experts and fact witnesses, who may be called to testify on behalf of the defendants at the trial of this case.

ANSWER:

12. With respect to each person identified in answer to the previous interrogatory state the following:

A.   Whether a statement or report was obtained from such person by the defendant, the defendant's attorney, defendant's agents, or the defendant's representative.

B.   The name, address, and title of the person obtaining such statement(s) or report(s) and the dates on which it (they) was (were) taken or prepared.

C.   The substance of the statement(s) or report(s).

D.   Whether the statement or report was written, electronically transcribed, or stenographically transcribed, and the name and address of the person now having custody of the statement or report.

E.   A summary of the expected testimony of each such person.

7

13. State the name of any expert witnesses who may be called to testify, and for each, give the substance of their testimony.

ANSWER:

14. Please state the name, address, and phone number of every person known by the defendant, defendant's attorney, defendant's agents, or the defendant's representatives who have had or claim to have had any contact and/or conversations with the plaintiff in connection with the subject matter set forth in the Complaint.

ANSWER:

15. Identify the person or persons who were involved in the investigation, evaluation, supervision, analysis, or any other aspect of the dangers associated with the Release of C-8 and/or other Materials from the Defendant's facilities from 1950 to the present time.

ANSWER:

8

16.   Please provide the names and addresses of all of the Defendant's employees who, since 1950, have presented claims or filed lawsuits against the Defendant for injury alleged to have been caused by exposure to C-8.

ANSWER:

17.   State the names and addresses of all persons who, since 1950, have presented claims or filed lawsuits against the Defendant for injury alleged to have been caused by exposure to C-8.

ANSWER:

18.   Please provide the names and addresses of all of the Defendant's employees who, since 1950, have presented claims or filed lawsuits against the Defendant for injury alleged to have been caused by exposure to any Materials released by the Washington Works Plant.

ANSWER:

9

19. Does the Defendant dispute that it contaminated the human water supply, including the Ohio River, by releasing C-8 from its Washington Works Plant?

ANSWER:

20. If the answer to any of the Requests for Admission served contemporaneously with this set of Interrogatories is anything other than an unqualified "Admit", as to each such denial or qualification, please state with specificity and in detail, the reasons for your qualification and/or denial; identify any and all individuals who possess information and/or provided information to support your denial and/or qualification; and, identify and produce any and all documents in your possession which supports your denial or qualification.

ANSWER:

21. Identify all interaction that the Defendant had with the U.S. E.P.A. concerning the Washington Works Plant from 1950 to the present time.

ANSWER:

10

22. Identify all interaction that the Defendant had with the Ohio E.P.A. concerning the Washington Works Plant from 1950 to the present time.

ANSWER:


These Interrogatories shall be deemed continuing so as to require supplemental answers if you or your attorneys obtain further information between the time the answers are served and the time of trial.


Respectfully submitted,

**DAVIS & YOUNG**

By: _____

GREGORY H. COLLINS (0040230)
DAVID G. UTLEY (#0038967)
One Cascade Plaza, Ste. 800
Akron, Ohio  44308
Phone:         (330) 376-1717
Facsimile:     (330) 376-1797
E-mail:        gcollins@davisyoung.com
               dutley@davisyoung.com

*Attorneys for Plaintiff, Thomas Yakubik*

11

IN THE COURT OF COMMON PLEAS
WASHINGTON COUNTY, OHIO

THOMAS YAKUBIK                  )    CASE NO.
P.O. BOX 41                      )
BARLOW, OHIO 45712               )    JUDGE
                                 )
                Plaintiff,       )    **PLAINTIFF'S FIRST SET OF**
                                 )    **REQUESTS FOR PRODUCTION**
v.                               )    **OF DOCUMENTS DIRECTED TO**
                                 )    **THE DEFENDANT**
E.I. DUPONT DE NEMOURS &         )
COMPANY, a Delaware corporation, )
                                 )
                Defendant.       )

Plaintiff, Thomas Yakubik, pursuant to Ohio Rule of Civil Procedure 34, requests E.I.

DUPONT DE NEMOURS & COMPANY, to produce for inspection and copying at the office

of Davis & Young, One Cascade Plaza, Suite 800, Akron, OH   44308, the following

documents:

1.   Complete copy of any materials in the possession of the Defendant dealing with Plaintiff's
release of C-8 from 1950 to the present time.   This would include, but not be limited to, any
electronic materials, electronic notes, inter-office correspondence, e-mails relative to the
release of C-8, recorded voice mails relative to the release of C-8, or any other materials in the
Defendant's possession relative to the release by the Defendant of C-8, irrespective of whether
it was at Washington Works Plant or elsewhere.

2.   Complete copy of any materials in the possession of the Defendant dealing with Plaintiff's
decision to release C-8, from 1950 to the present time, into the Ohio River.   This would
include, but not be limited to, any electronic materials, electronic notes, inter-office
correspondence, e-mails relative to the release of C-8, recorded voice mails relative to the
release of C-8, or any other materials in the Defendant's possession relative to the release by the
Defendant of C-8, irrespective of whether it was at Washington Works Plant or elsewhere.

2

3.  Complete copy of all logs, lists, or other data depicting the volume method and destination of C-8 released by the Washington Works Plant from 1950 to the present time.

4.  Complete copy of all logs, lists, or other data depicting the volume method and destination of Material released by the Washington Works Plant from 1950 to the present time.

5.  Complete copy of all logs, lists, or other data depicting the volume method and destination of C-8 released by the Washington Works Plant from 1950 to the present time.

6.  Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the danger that the release of C-8 may pose to humans, the environment or wildlife if released by the Washington Works Plant, from 1950 to the present time.

7.  Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the danger that the release of C-8 may pose to humans, the environment or wildlife if released by the Defendant, from 1950 to the present time.

8.  Any and all statements and/or testimony of the Defendant or any of its officers, representative, consultants, experts or employees to any governmental entities, groups, investigators or employees dealing with the release of C-8.

9.  Any and all statements and/or testimony of the Defendant or any of its officers, representative, consultants, experts or employees to any governmental entities, groups, investigators or employees dealing with the release of Materials from the Washington Works Plant.

10.  Copies of all appraisals relative to the damage caused by the release C-8 into the environment.

11.  Certified copies of all policies on which the Defendant is or was a named insured since 1950 to the present time.

12.  A list of all employees, by name, address and telephone number, that worked at the Washington Works Plant from 1950 to the present time.

13.  Copies of all communications, citations, or correspondence to or from the Ohio EPA relative to the Washington Works Plant.

14.  Copies of all communications, citations, or correspondence to or from the U.S. EPA relative to the Washington Works Plant.

15.  Copies of all communications, citations, or correspondence to or from the West Virginia Division of Environmental Protection relative to the Washington Works Plant.

3

16. Copies of all memoranda, notes, seminars, training materials, videotapes, policies, practices, guidelines etc. relative to the Defendant's compliance with the Environmental Regulations of Ohio, West Virginia and/or the United States concerning the disposal of, the release of, the confinement of C-8. This should include, but not be limited to, all such materials dealing with handling C-8 disposal, storage, confinement at the Washington Works Plant and other facilities owned by or controlled by the Defendant from 1950, to the present time.

17. Copies of all inquiries from the Ohio EPA, the US EPA and the West Virginia Department of Environmental Protection relative to the Defendant's handling of C-8 and/or other Materials for the time period of 1/1/50 through the present.

18. Copies of all inquiries from the Ohio EPA, the US EPA and the West Virginia Department of Environmental Protection relative to the Defendant's alleged violation of any environmental regulations concerning the Washington Works Plant.

19. Copies of all filings with the Ohio EPA, the US EPA and the West Virginia Department of Environmental Protection relative to the Defendant's operations at the Washington Works Plant for 1/1/50 through the present.

20. Copies of all memoranda, notes, seminars, training materials, videotapes, policies, practices, guidelines etc. relative to the training of the Defendant's personnel in the handling of hazardous materials for the time period of 12/1/90 through the present.

21. Copies of all memoranda, notes, seminars, training materials, videotapes, policies, practices, guidelines etc. relative to the training of the Defendant's personnel at the Washington Works Plant in compliance with Safe Practice for the time period of 12/1/90 through the present.

22. Identify and produce copies of all State of Ohio regulations and/or guidelines that the Defendant utilized or utilizes or is governed by in the handling of C-8 at the Washington Works Plant.

23. Identify and produce copies of all State of West Virginia regulations and/or guidelines that the Defendant utilized or utilizes or is governed by in the handling of C-8 at the Washington Works Plant.

24. Identify and produce copies of all United States regulations and/or guidelines that the Defendant utilized or utilizes or is governed by in the handling of C-8 at the Washington Works Plant.

25. Copies of all memoranda, notes, seminars, training materials, videotapes, policies, practices, guidelines etc. relative to the training of the Defendant's personnel in the handling of C-8 for the time period of 12/1/90 through the present.

4

26.  Any information in the possession of the Defendant evidencing th eDefendant's ownership of the manufacturing facility in Wood County, West Virginia known as the "Washington Works Plant".

27.  Any information in the possession of the Defendant describing, listing, inventorying or in any other way memorializing the types and volumes of hazardous, toxic and/or carcinogenic wastes, substances, pollutants and/or contaminants, including but not limited to, ammonium perfluorooctanoate (a/k/a C-8/FC-143/APFO/DFS-2/PFOA), in the possession of the Washington Works Plant since the early 1950s.

28.  Any information in the possession of the Defendant describing, listing, inventorying or in any other way memorializing the types and volumes of hazardous, toxic and/or carcinogenic wastes, substances, pollutants and/or contaminants, including but not limited to, ammonium perfluorooctanoate (a/k/a C-8/FC-143/APFO/DFS-2/PFOA), released by the Washington Works Plant, since the early 1950s.

29.  Any information in the possession of the Defendant describing, listing, inventorying or in any other way memorializing the disposal methods and locations of all of the types and volumes of hazardous, toxic and/or carcinogenic wastes, substances, pollutants and/or contaminants, including but not limited to, ammonium perfluorooctanoate (a/k/a C-8/FC-143/APFO/DFS-2/PFOA), released by the Washington Works Plant, since the early 1950s.

30.  Any information in the possession of the Defendant describing, discussing or in any way refe
referencing dangers associated with bioaccumulative substances.

31.  Any information in the possession of the Defendant describing, discussing or in any way referencing dangers associated with biopersistent substances.

32.  Any information in the possession of the Defendant describing, discussing or in any way referencing dangers associated with animal carcinogens.

33.  Any information in the possession of the Defendant describing, discussing or in any way referencing levels of C-8 detected in any water tested by the Defendant from 1950 to the present time.

34.  All copies of DuPont's own internal "community exposure guideline" (CEG) from the time it was first created to the present time.

35.  Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the decision by the Minnesota Mining and Manufacturing Company ("3M"), to stop manufacturing and selling C-8, based upon concerns associated with the bio-persistence and relative toxicity of

C-8 and threat that the US EPA would ban the material.

36. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing any knowledge that DuPont had that C-8 had been detected in private water wells hydraulically down-gradient from one or more of the locations where DuPont had dumped C-8 into the ground.

37. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the decision by the Defendant to direct manufacture of its own C-8 at the Washington Works plant.

38. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing that the level of C-8 discharged from its Washington Works Plant was contributing to the levels of C-8 present in human water supplies.

39. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the Spring of 2001, request by the West Virginia Division for Environmental Protection ("WVDEP") of DuPont to begin monitoring and reporting to WVDEP the levels of C-8 discharged from DuPont's Washington Works plant into the Ohio River

40. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the installation of a carbon absorption treatment system at its Washington Works plant to attempt to begin reducing the levels of C-8 discharged directly from the Washington Works Plant into the Ohio River.

41. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the installation of a carbon absorption treatment system at any facility owned by the Defendant from 1950 to the present time.

42. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the Little Hocking Water Association, Inc..

43. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the March 2009 U.S. EPA safe drinking Safe Drinking Water Act Consent Order entered into by DuPont.

44. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the impact that C-8 exposure can have on the health of a person.

6

45. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the ability of the Defendant to prevent C-8 from getting released into the environment.

46. Copies of any pleadings, briefs or depositions associated with any litigation involving the Defendant and it's possession, manufacture or disposal of C-8.

47. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the whether there is a probable link that exists between C-8 and human disease.

48. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the Science Panel established in connection with the West Virginia Class Action lawsuit.

49. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees produced by or provided to the Science Panel established in connection with the West Virginia Class Action lawsuit.

50. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing whether there is a probable link that exists between exposure to C-8 and kidney cancer.

51. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing whether there is a probable link that exists between exposure to C-8 and testicular cancer.

52. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing whether there is a probable link that exists between exposure to C-8 and ulcerative colitis.

53. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing whether there is a probable link that exists between exposure to C-8 and thyroid disease.

54. Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing whether there is a probable link that exists between exposure to C-8 and pregnancy-induced hypertension.

55. Tax Returns for the Defendant from 1990 through the present.

56. A copy of any and all reports, memoranda, or other written material received by Defendant, or counsel for Defendant, from any and all proposed expert witnesses.

7

57.  Any and all materials provided to any experts identified in response to a previous request for production.

58.  A copy of any and all financial reports of the Defendant from 1990 through the present.

59.  All tangible objects, documents, writings, depiction, or other physical evidence within your possession which are relevant and/or material to the issues raised in the complaint herein, or which are reasonably calculated to lead to the discovery of admissible evidence.

60.  All tangible objects, documents, or other exhibits which you intend to introduce into evidence at the trial of this matter.

61.  A copy of all E.I. DUPONT DE NEMOURS & COMPANY procedure manuals relating to the handling of complaints by individuals that the Defendant was damaging property or causing injury to persons because of activities of the Defendant.

62.  Copies of all manuals, memoranda, notes, seminars, training materials, videotapes, policies, practices, guidelines etc. relative to the Defendant's obligation to act in Good Faith in the treatment of individuals and property in the areas in which it operates.

63.  Copies of all inquiries from the Ohio EPA, the US EPA and the West Virginia Department of Environmental Protection relative to the Defendant's conduct.

64.  Any and all evidence in the possession of the Defendant which supports the contention that the release of C-8 that the Defendant performed did not in any way cause injury to persons.

65.  Any and all evidence in the possession of the Defendant which supports the contention that the release of C-8 that the Defendant performed did not in any way cause injury to livestock.

66.  Any and all evidence in the possession of the Defendant which supports the contention that the release of C-8 that the Defendant performed was not done at a time when the Defendant had knowledge of the dangers associated with C-8.

67.  To the extent not otherwise requested, identify and produce any and all manuals relative to the handling of hazardous materials governing the operation of the Defendant's facilities from 1950 to the present time.

68.  Any memorandum, studies, correspondence, emails or any other materials in the possession of the Defendant, it's consultants or employees discussing or referencing the efforts that the Defendant or its related companies have taken to clean-up all contamination caused by its release of C-8 from 1950 to the present time.

8

69. A list of all payments made to companies or individuals that have presented claims against the Defendant in the past 10 years alleging that C-8 has damaged them.

This Request may be complied with by mailing legible copies of the above items to

Counsel for Defendant within twenty-eight (28) days of receipt of a copy of this Request.

Respectfully submitted,

DAVIS & YOUNG

By: _____
GREGORY H. COLLINS (0040230)
DAVID G. UTLEY (#0038967)
One Cascade Plaza, Ste. 800
Akron, Ohio 44308
Phone: (330) 376-1717
Facsimile: (330) 376-1797
E-mail: gcollins@davisyoung.com
          dutley@davisyoung.com

*Attorneys for Plaintiff, Thomas Yakubik*

9

**IN THE COURT OF COMMON PLEAS**
**WASHINGTON COUNTY, OHIO**

| | |
|---|---|
| **THOMAS YAKUBIK** ) | **CASE NO.** |
| **P.O. BOX 41** ) | |
| **BARLOW, OHIO 45712** ) | **JUDGE** |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S FIRST SET OF** |
| ) | **REQUESTS FOR ADMISSION** |
| v. ) | **DIRECTED TO THE DEFENDANT** |
| ) | |
| **E.I. DUPONT DE NEMOURS &** ) | |
| **COMPANY, a Delaware corporation,** ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Thomas Yakubik, pursuant to Rule 36 of the Ohio Rules of Civil Procedure,

Plaintiff hereby requests that the Defendant, E.I. DUPONT DE NEMOURS & COMPANY,

admit or deny the truth of the following Requests for Admissions in writing, under oath, and

within twenty-eight (28) days of the receipt hereof.

If you are unable to admit or deny the truth of the following Requests for Admissions or

if you object to any of the following Requests for Admissions, you must specifically deny the

matter or set forth in detail the reasons why you cannot truthfully admit or deny the matter.

Your denial shall fairly meet the substance of the requested admission, and when good faith

requires that you qualify your answer or deny only parts of the matter which the admission has

requested, you must specify some of it as true and qualify or deny the remainder. You may not

give lack of information or knowledge as a reason to fail to admit or deny unless that you state

that you have made reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny the following Request for Admission. If you consider that a matter of which an admission has been requested presents a genuine issue for trial, you may not object on that ground alone to the request. You may, subject to provisions of Rule 37 (C) of the Ohio Rules of Civil Procedure, deny the matter and set forth reasons why you cannot admit or deny the following Request for Admission.

If an answer or an objection to the following Request for Admissions is determined by a court to be unjustified, then a court may order you to answer the Request for Admission; or if your answer does not comply with the requirement of Rule 36 (A) of the Ohio Rules of Civil Procedure, the court may order that the matter is admitted or that an admitted answer be served.

1. That at all times material, Plaintiff resided in Washington County, Ohio.

RESPONSE:

2. That Defendant, DuPont is a Delaware Corporation authorized to conduct business in the State of Ohio and has a principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

RESPONSE:

3. That this Court has jurisdiction over DuPont by virtue of R.C. 2307.382, because DuPont owns and operates facilities in Ohio, transacts business in Ohio, and contracts to sell its goods in Ohio.

RESPONSE:

4. That this Court also has jurisdiction as DuPont's acts and/or omissions, as described herein, have caused tortious injury to Plaintiff in Ohio and because DuPont regularly does or solicits business in Ohio, has persistently through its acts and/or omissions caused contamination of human water supply in Ohio, derives substantial revenue from goods used or consumed in Ohio, and has continuous and systematic contacts with Ohio.

RESPONSE:

4

5. That venue is proper because DuPont has conducted activity in Washington County that gives rise to this claim for relief.

RESPONSE:

6. That DuPont owns and operates a manufacturing facility in Wood County, West Virginia known as the "Washington Works Plant", and has been the owner and operator at all times relevant to this Complaint.

RESPONSE:

7. In connection with its manufacturing operations at its Washington Works Plant, DuPont has used hazardous, toxic and/or carcinogenic wastes, substances, pollutants and/or contaminants, including ammonium perfluorooctanoate (a/k/a C-8/FC-143/APFO/DFS-2/PFOA) (hereinafter "C-8"), (collectively the "Materials") since the early 1950s.

RESPONSE:

8. During the course of its operations at its Washington Works Plant, DuPont has negligently, recklessly, knowingly, carelessly, wrongfully and/or intentionally allowed, caused, and/or otherwise permitted and is continuing to so allow, cause and otherwise permit releases of Materials from the Washington Works Plant into those waters that are and have been used for human drinking water purposes (the "Releases).

RESPONSE:

5

9. That C-8 is a bioretentive substance.

RESPONSE:

10. That C-8 is a bioaccumulative substance.

RESPONSE:

11. That C-8 is a biopersistent substance.

RESPONSE:

12. That C-8 is an animal carcinogen.

RESPONSE:

13. That C-8 is a proven hazardous substance.

RESPONSE:

14. That DuPont negligently, recklessly, carelessly, wrongfully, and/or intentionally failed to disclose to those individuals who used water impacted by the Releases that the levels of C-8 detected in the water exceeded DuPont's own internal "community exposure guideline" (CEG) of 1 part per billion (1 ppb) for C-8 in drinking water.

RESPONSE:

6

15. That by at least May of 2000, DuPont had learned that the manufacturer of the C-8 used by DuPont at its Washington Works Plant, the Minnesota Mining and Manufacturing Company ("3M"), had decided to stop manufacturing and selling C-8, based upon concerns associated with the bio-persistence and relative toxicity of C-8 and threat that the US EPA would ban the material.

RESPONSE:

16. That by at least 2001, DuPont had learned that C-8 had been detected in private water wells hydraulically down-gradient from one or more of the locations where DuPont had dumped C-8 into the ground.

RESPONSE:

17. That despite knowledge of the same bio-persistence and toxicity concerns known to 3M relating to the use of C-8 and its release into the environment and the fact that C-8 was getting into public and private drinking water supplies, DuPont began direct manufacture of its own C-8 at the Washington Works plant.

RESPONSE:

18. That DuPont knew for several years that the level of C-8 discharged from its Washington Works Plant was contributing to the levels of C-8 present in human water supplies.

RESPONSE:

7

19. That it was not until the Spring of 2001, after the West Virginia Division for Environmental Protection ("WVDEP") first asked DuPont to begin monitoring and reporting to WVDEP the levels of C-8 discharged from DuPont's Washington Works plant into the Ohio River, that DuPont installed a carbon absorption treatment system at its Washington Works plant to attempt to begin reducing the levels of C-8 discharged directly from the Washington Works Plant into the Ohio River.

RESPONSE:


20. That at all times relevant hereto, the Little Hocking Water Association, Inc. has operated a public water supply system that supplies potable water to residences, including the Plaintiff's, in at least eight townships in Washington County, Ohio and two townships in Athens County, Ohio, including approximately 12,000 people.

RESPONSE:


21. That in a March 2009 U.S. EPA safe drinking Safe Drinking Water Act Consent Order with DuPont, the U.S. EPA determined that C-8 its salts may present an "imminent and substantial endangerment to human health at concentrations at or above 0.40 ppb in drinking water." The levels of C-8 in Little Hocking's aquifer were above 0.40 ppb.

RESPONSE:

8

22. That the 0.40 ppb level does not account for chronic exposure to C-8. In an effort to account for chronic lifetime exposure, independent scientists at the New Jersey Department of Environmental Protection identified a C-8 drinking water guidance value of 0.04 ppb, an order of magnitude ten times lower than the level set forth in the March 2009 Safe Drinking Water Act consent order.

RESPONSE:

23. That effective December 1, 2006, the Ohio EPA listed C-8 as a toxic air contaminant.

RESPONSE:

24. That the U.S. EPA has found that C-8 can remain in the human body for years and that drinking water contaminated with C-8 can produce concentrations of C-8 in the blood serum that are higher than the concentrations present in the water itself.

RESPONSE:

9

25. That individuals whose residential water is supplied by Little Hocking have some of the highest non-worker C-8 blood levels of any reported in the United States and Canada- ranging from approximately 112 ppb to, at least, 1950 ppb.

RESPONSE:


26. That the average level of C-8 in the blood of people in the United States is 4-5 ppb.

RESPONSE:


27. That given the high level of C-8 in the blood of Little Hocking's water users along with the bio-persistent nature of C-8 in environmental media and humans, continued C-8 exposure presented a great threat to Little Hocking's water users.

RESPONSE:


10

28.  That aampling results for Little Hocking's individual production wells have shown levels of C-8 as high as 18.6 ppb. Samples from test wells have shown levels of C-8 as high as 29.1 ppb, samples from test borings have shown levels of C-8 as high as 78 ppb, and soil samples from the wellfields have shown levels of C-8 over 100 ppb.

RESPONSE:


29.  That in a 2003 C-8-related West Virginia class action lawsuit ("class action") against DuPont:

a)  DuPont represented to the court that there is no way for DuPont to prevent its C-8 emissions from getting into the class members' drinking water;

b)  DuPont represented to the court that there are no alternatives to using C-8 in any of the Washington Works Plant's manufacturing operations; and

c)  the court found that DuPont continues to actively and intentionally release C-8 from the Washington Works Plant into the air and water.

RESPONSE:


30.  That part of the class action settlement created a Science Panel to conduct research into whether there is a probable link that exists between C-8 and human disease.

RESPONSE:

11

31.   That on April 15, 2012 the Science Panel concluded that there is a probable link between exposure to C-8 and kidney cancer.

RESPONSE:


32.   That the Science Panel has also found a probable link between exposure to C-8 and testicular cancer, ulcerative colitis, thyroid disease, pregnancy-induced hypertension to date.

RESPONSE:


33.   That as a result of C-8 in his blood, Plaintiff had his left kidney removed and Plaintiff was diagnosed with chromophobe renal cell carcinoma ("CRCC").

RESPONSE:


12

34. That the Releases of the Defendant have made and/or continue to make Plaintiff physically ill and otherwise physically harmed, and/or have caused and continue to cause associated emotional and mental stress, anxiety, and fear of current and future illnesses, including but not limited to, fear of significant risk of cancer and other diseases and illnesses.

RESPONSE:


35. That in connection with its operation of the Washington Works Plant, DuPont has had and continues to have a duty to operate and manage the Washington Works Plant in such a way as to not create a nuisance or condition causing any injury or damage to human health or the environment.

RESPONSE:


36. That DuPont breached its duty of care by negligently operating and managing the Washington Works Plant and conducting other operations and activities at the Washington Works Plant in such a manner as to negligently cause, permit, and allow the Releases.

RESPONSE:

13

37. That the Defendant's negligent acts and omissions proximately caused and continue to cause damages to Plaintiff in the form of cancer and bodily injury.

RESPONSE:

38. That the Defendant knowingly, intentionally, recklessly and/or negligently failed and/or refused to advise the Plaintiff of the danger to his health and property posed by the Releases.

RESPONSE:

14

39. At all times relevant herein, DuPont had and continues to have a duty to, *inter alia*:

a)   Take adequate and timely precautions to prevent the Materials from being released and contaminating the environment, including the soil, surface water, sediments, biota, groundwater, and human drinking water;

b)   To remove the Materials from the soil, surface water, sediments, biota, groundwater, and human drinking water;

c)   To adequately warn federal, state, and local authorities, potentially affected members of the public, and purveyors of public water; and

d)   To handle, treat, store and/or dispose of the Materials in such a manner so as to not create a nuisance or a condition causing imminent and substantial danger to human health and/or the environment.

RESPONSE:

40. That Defendant knowingly, intentionally, recklessly and/or negligently withheld information from the Plaintiff, who had a right to know of information which would have prevented Plaintiff from being exposed to the Materials.

RESPONSE:

15

41. That Plaintiff did not have sufficient information to determine the safety of the drinking water impacted by the Releases and, therefore, relied upon the superior knowledge of the Defendant in deciding to ingest the drinking water, and as result of his reliance on the Defendant's false and misleading affirmative misrepresentations and intentional omissions and hiding of relevant, significant and material facts and information, Plaintiff was misled into believing that the drinking water was safe and effective for human consumption.

RESPONSE:

42. That Defendant withheld information which they had in their possession concerning research, testing, lack of research and testing, studies of humans and animals who had been exposed to the Materials that demonstrated that the Materials cause damage to humans and animals, as well as information that medically, legally, scientifically and ethically the Plaintiff had a right to know before ingesting the drinking water and which Defendants had a duty under Ohio law to disclose.

RESPONSE:

16

43. That as a proximate result of the aforesaid acts and omissions by the Defendant and acting for and on their own behalf and as agents, ostensible agents, employees, conspirators and joint venturers of others, contaminated drinking water was placed in the stream of commerce, distributed and sold to customers in Ohio and ingested by the Plaintiff, and the Plaintiff was injured as herein alleged.

RESPONSE:

44. That Plaintiff has been exposed to the Releases from the Washington Works Plant as a proximate result of DuPont's acts and omissions.

RESPONSE:

45. That the use, disposal, storage, generation and release of the Materials are abnormally dangerous or ultrahazardous activities in which DuPont is and has been engaged.

RESPONSE:

17

49. That the Materials present in Plaintiff's body originating from the Washington Works Plant were at all relevant times hereto, and continue to be, the property of Defendant.

RESPONSE:

50. That the invasion and presence of the Materials at, under, onto, and into Plaintiff's body and property was and continues to be without permission of authority from Plaintiff.

RESPONSE:

51. That the presence and continuing presence of the Material at, under, onto, and into Plaintiff's body and property constitutes a continuing trespass and battery.

RESPONSE:

52. That the Defendant's past and continuing trespass and battery upon Plaintiff's body and property proximately caused and will continue to proximately cause damage to Plaintiffs and other class members in the form of bodily injury and property damage, for which the Defendant is liable.

RESPONSE:


53. That the Defendant's acts and omissions as described above were conducted with such intentional, malicious, wanton, willful, and reckless indifference to Plaintiff's rights and flagrant disregard for the safety and property of the Plaintiff that the Defendant is liable for punitive damages.

RESPONSE:

20

54. That the Defendant's conduct in exhorting the prosecutorial authorities was done without reasonable justification and with a malicious and reckless intent to injure the Plaintiff.

RESPONSE:

Respectfully submitted,

DAVIS & YOUNG

By: _____
GREGORY H. COLLINS (0040230)
DAVID G. UTLEY (#0038967)
One Cascade Plaza, Ste. 800
Akron, Ohio   44308
Phone:        (330) 376-1717
Facsimile:    (330) 376-1797
E-mail:       gcollins@davisyoung.com
              dutley@davisyoung.com

*Attorneys for Plaintiff, Thomas Yakubik*

21